TRUSTEES OF FUND OF EPISCOPATE V. COLEGROVE.

*Will — construction of — gift to religious corporation — sufficiency of description*
*— when extrinsic evidence admissible to explain intent.*

A testator who resided in Tompkins county directed his executors to pay a
specified sum "to the officers of the Protestant Episcopal Church into the
fund to support the episcopacy of said church." At the time of the making
of the will there was a corporation named "The trustees for the management
and care of the fund for the support of the episcopate of the diocese of Cen-
tral New York," which had charge of a fund for the support of the Episco-
pal bishop of that diocese, which embraced Tompkins county. The testator
knew of the existence of such corporation, and at the time of the execution
of the will an effort was being made to increase the fund. *Held,* that the
description in the will was sufficiently explicit to designate the fund intended,
and the trustees thereof were included in the term "officers of the Protestant
Episcopal Church."

There were shown to be other dioceses in which there were trustees and funds
for the support of the episcopate. *Held,* that as the ambiguity was caused
by extrinsic evidence, it could be removed by the same evidence.

*Held,* also, that evidence of statements made by testator about the time he
made his will were admissible to show his intention as to the parties who
he designed should take the bequest.

APPEAL by defendants from a decree or judgment rendered at
the Onondaga special term.

The action was one in equity and was brought by the trustees for the
management and care of the fund for the support of the episcopate
of the diocese of Central New York against Henry B. Chase and
others, executors of the last will of John Carr, deceased, Louisa
Colegrove, and others, next of kin of said deceased, and legatees
under said will, to obtain an adjudication or construction of said will.
The deceased resided at Trumansburgh, in Tompkins county, and
died in January, 1872. The sixth clause of the will was as fol-
lows:

"6th. I give, devise and bequeath unto my executors herein-
after named my farm in Ulysses, upon which I now reside, in
trust, to sell the same at such time and for such price as shall
seem to them meet, and give regular conveyance for the same,
with or without a covenant of warranty, and from the proceeds
and securities taken and received for the same *the said execu-
tors are hereby authorized to pay over to the officers of the Pro-*

Trustees of Fund of Episcopate v. Colegrove.

*testant Episcopal Church into the fund to support the episcopacy of said church so much* only of said proceeds of the said farm and to include the said $9,000 given to the Episcopal Church of the Epiphany in Trumansburgh, and the sum of $500 hereinafter given to the Methodist Episcopal Church of Jacksonville as shall be and make one equal half of my whole estate, and no more."

The complaint also sought for an accounting of the executors of said will, and a judgment directing payment to the plaintiff of the the said legacy so given by said will to the officers of the Protestant Episcopal Church, for the support of the episcopacy of said church.

On the trial the plaintiffs gave evidence showing that they were trustees for the management and care of a fund for the support of the episcopate of the diocese of Central New York, comprising fourteen counties of the State, among others the said county of Tompkins, and that they are duly organized as a corporation for that purpose under an act of the legislature of this State, entitled " An act to provide for the incorporation of trustees for the management and care of certain funds now held for the Protestant Episcopal Church in the diocese of Western New York, passed April 28, 1868," and gave other evidence tending to show that the plaintiffs were entitled to receive and recover said legacy, and the judge so held and decided, and directed an accounting by said executors to ascertain the amount which would be payable to the plaintiffs under said will.

From this order the defendants, the residuary legatees, Louisa Colegrove and another, appealed.

*George N. Kennedy,* for appellants.

*George F. Comstock,* for respondent.

Present — MULLIN, P. J., E. DARWIN SMITH and MORGAN, JJ.

E. DARWIN SMITH, J. The findings of the learned judge who tried this cause at special term fully warrant his conclusions upon the law and the order directed by him. · The findings, among other things, state, that at the time of the making of said will there was, and· now is, appertaining to the diocese of Central New York, a fund for the support of the bishop of said diocese, and his successors in office, known as the fund for the support of the epis-

copate of said diocese, which said fund consists of about $60,000 of invested capital, and is, and since its creation has been, in the custody and care of the incorporated body of trustees who are plaintiffs in this action; that the income of said fund is not sufficient to pay the salary of the bishop ; and at the time of the making of said will, an organized effort was being made in the diocese for the increase of said fund, and the fact last mentioned was known to the said testator ; and also that the said John Carr (the testator), in and by the sixth clause of his said will, in fact intended to give the legacy therein mentioned to the plaintiffs in this action for the augmentation and increase of the fund for the support of the episcopate ; and, as a conclusion of law, he held and found that the said legacy was valid and belonged to the plaintiffs, and they were entitled to recover the same.

The first objection arising upon the defendants' exceptions to the findings of the judge is, that the plaintiffs are not officers of the Protestant Episcopal Church, but trustees of a fund existing for the purpose of supporting the bishop, and that the bequest is to be paid over " to the officers of the Protestant Episcopal Church." It is true that the bequest is not made to the plaintiffs by their corporate name, but this is not essential, if the language of the will sufficiently describes them by their character, office, or duty. All that is requisite in this connection is such a specification or description of the object of the bequest or legacy as will show the intention of the testator. Wigram on Wills, 108 ; Hawkins on Wills, 9, 10 ; *Thomas* v. *Stevens*, 4 Johns. Ch. 607 ; *Connolly* v. *Pardon*, 1 Paige, 292 ; *Stevens* v. *Powys*, 1 De G. & J. 24. Legacies to corporations frequently misstate the true corporate name, but this will not invalidate when the intent is clear, and the identity of the party in a deed or will is always provable by parol.

The bequest was not only given to the officers of the Protestant Episcopal Church, but, to make more sure in respect to the persons to take such bequest, the words are added, "*into the fund to support the episcopacy of said church.*"

The plaintiffs are the trustees of such a fund, and they are included in the general description of the officers of the said church in connection with such fund. The intent obviously was to give it to the fund named in charge of the proper officers acting for the church or diocese in charge of such fund. The terms used are descriptive of the plaintiffs, with as much accuracy as will

probably occur in most cases in wills where legacies are given to charitable or benevolent societies, institutions or corporations. Wills, in many and perhaps in most cases, are drawn in haste ; and when there is not time or opportunity to learn the true name of the legatee, courts are bound to give effect to the intention of the testator if it can be ascertained, and see that his will is not defeated by narrow technicalities.

But it is objected further "that the payment is to be made into the fund to support the episcopacy," and the testator may have intended that the fund be used and applied for the general purposes of the church, and not particularly for the support of the bishop of the diocese.

If the language of the will were in form that said legacy should be used or paid to any persons or. officers to support episcopacy, in general terms, it would doubtless be liable to the objection urged. Episcopacy in such sense would apply alike to all churches which have the episcopal form of church government. Webster defines episcopacy as "a government of a church by bishops or prelates ; that form of ecclesiastical government in which diocesan bishops are established as distinct from, and superior to, priests or presbyters ; government of the church by three distinct orders of ministers, bishops, priests and deacons."

Such, doubtless, is the general sense or meaning of the word "episcopacy," as commonly used and understood in this country and in Europe. This description of episcopacy would include, as the proofs clearly show, the Protestant Episcopal Church in this State and country, and these words necessarily limit and restrict the claim to this legacy to that church. And the language of the will does not make the bequest payable for the general support of the church on the ground that it is episcopal, and that in that sense it would support episcopacy. That clearly was not the intent of the testator. The bequest was to go into, that is to say, the proceeds of the said bequest is to be paid into, *the* fund for the support of *the* episcopacy of said church. This is precise and clear. The bequest is to be used and applied to increase, or to be added to a fund already in existence held by officers of the church for the support of the episcopacy of said church, that is, for the support of the order of bishops in said church. The word "episcopacy" in this bequest is obviously used in the restricted sense, as synonymous with episcopate.

It is urged that there are in said diocese several other funds : A

general fund, a missionary fund, and a parochial fund, to which the words of the bequest might apply, as funds whose use was designed for the general objects of the church, and in that sense for the support of the episcopacy, but the terms of the bequest cannot apply to these funds, for they are neither created, designed nor held in trust for the support of the episcopacy of the church. The terms of the bequest, it seems to me, apply to the plaintiffs expressly, and they are embraced within its design and particular description.

The next point presented by the defendants' counsel for consideration arises upon the proof that there are four other dioceses in the State of New York beside the diocese of Central New York, having respectively trustees and a fund held by them for the support of the episcopate, to either of which the terms of this bequest may be applied, and will apply as well and equally so as to the plaintiffs. This is doubtless so upon the face of the evidence, but this fact presents simply a case of latent ambiguity, in respect to which the rule is that, inasmuch as the ambiguity is raised by extrinsic evidence, so it may be removed in the same manner. Broom's Legal Maxims, 614; Bacon's Legal Maxims, 90; Wigram on Wills, 107, 185, 232; Hawkins on Wills, 9, 10.

The evidence received by the judge on the trial directed to show the intention of the testator in making such bequest, and that such intention was to devote the proceeds after such bequest to the support of the episcopate of and in the diocese of Central New York, I think was all properly received. Extrinsic evidence is always admissible to show the situation of the testator, his family and his property, and of the existing and surrounding circumstances at or about the time of the making the will and in aid of the construction of such will, and also declarations and acts of his, indicative of the purpose of his mind in respect to his will or in respect to the legatees mentioned therein, and declarations not contemporaneous with the will may also be received as evidence of the intention of the testator. *Allen* v. *Allen*, 2 Ad. & Ell. 441; C. C. & R., vol. 40. It appears that the testator was a communicant in the Episcopal Church at Trumansburgh, the place of his residence; that he knew the bishop of that diocese, and had heard him preach in such church upon one of his visitations to that parish, and had been introduced to him, and that he knew that an effort was making in the diocese to increase the fund for the support of the episcopate in said diocese, and that, upon being visited by the rector of said parish a day or two before his death, he put to him the questions

following: "Are they not trying to raise a fund for the support of the bishop?." To which the minister replied: "Yes, sir, we are." And the said minister then further said to him: "If you are intending to leave a legacy toward church objects, I wish you would not forget our parish at Trumansburgh, for we are intending to build a new church there." To which the testator replied: "I intend to do something for that, too." In his conversation with his attorney, who drew the will, at the time when he gave instructions in regard to the will, he mentioned the name of Bishop Huntington, and said he had seen him once at Trumansburgh, and he also said, speaking of the clause which was in his own language in regard to the episcopacy: "That was to go into this fund. He said there were officers or men who had charge of a fund to support the episcopacy of that church." This evidence was admissible within the seventh proposition stated in the introduction to Wigram on Wills, O'Hara's 2d American ed., p. 57, as follows: "Courts of law in certain cases admit extrinsic evidence of intention to make certain the person or thing intended when the description in the will is insufficient for the purpose." Also at page 50 he says: "Evidence of intention is admissible to identify the subject or object of a gift."

The current opinion of the courts in this country is tending very clearly to greater liberality in receiving extrinsic evidence to aid in giving a construction and effect to wills, and show what property was intended to be devised and what person was intended to take, as indicated by the following cases: *Howard, Executor,* v. *American Peace Society,* 49 Me. 288; *Winkley* v. *Kaime,* 32 N. H. 268; *Domestic & Foreign Missionary Society's Appeal,* 30 Penn. St. 425; *Button* v. *American Tract Society,* 23 Vt. 326; *Du Bois* v. *Ray,* 35 N. Y. 162; *Pond* v. *Bergh,* 10 Paige, 152.

Within the principle asserted in these and other cases, the extrinsic evidence taken at the trial was properly received in aid of the construction of this will, and was sufficient, in connection with the will, to warrant the finding of the learned judge, that the testator, as matter of fact, in and by the said sixth clause of his will, intended to give the legacy therein mentioned to the plaintiffs in this action for the augmentation of the fund for the support of the episcopate.

The order of the special term must, therefore, be affirmed, with costs.

*Order affirmed.*